Olendorf *v.* Cook.

ALFRED OLENDORF, Respondent, *v.* DAVID COOK and HENRY
A. COOK, Appellants.

(GENERAL TERM, EIGHTH DISTRICT, MAY, 1869.)

Upon the trial of an action of ejectment, defendant moved, after a jury
    had been impanneled, to dismiss the complaint, as containing no descrip-
    tion of any land. The motion was refused, and he excepted; later in the
    trial, and after an accurate description of the premises claimed had been
    given in evidence, the court allowed the plaintiff to amend by inserting such
    description in his complaint.—*Held*, that conceding the description to have
    been originally uncertain and defective (under 2 R. S., 304, § 8), the court
    was at liberty to proceed with the trial, and the allowance of the amend-
    ment was an exercise of judicial discretion not subject to review.
Though a lease for years is a chattel interest which goes to the personal
    representatives, ejectment lies to recover possession of the land demised.
Where an issue is raised by the answer upon reforming the instrument under
    which ejectment is brought (no issues having been settled with direction
    to try by jury), it should either be tried by the court prior to the trial of
    the principal issue, or reserved from the jury on submission of the jury
    issues. Per MARVIN, J.
When in such case, therefore, a trial occurs upon all the issues made, it is
    not error if the judge refuse to submit the question of reformation to the
    jury under evidence upon that issue. Id.
Defendant excepted to the decision allowing a description of the premises
    to be inserted in the complaint, and the court, afterwards under his general
    objection, directed the jury to find for possession by plaintiff according to
    the amended complaint, to which defendant also excepted. Whether he
    might, under such objection, claim as error on appeal that the judgment
    gave a longer term of possession than the proof warranted.—*Quere*.
Judgment being for possession as above stated, and plaintiff's title having
    expired since the trial, the judgment was affirmed, and execution for
    possession restrained.

APPEAL from judgment, upon verdict, in an action of eject-
ment.

*C. D. Murray*, for plaintiff.

*Sherman & Scott*, for defendants.

Present—MARVIN, LAMONT, and BARKER, JJ.

By the Court—MARVIN, P. J. It is alleged in the com-
plaint that the plaintiff, May 1, 1869, was seized as tenant

of the defendants for the term of two years, of premises situate in the village of Forrestville, etc., viz., the store-room of the said defendants, which at and previous to said time had been occupied by said defendants as a billiard saloon; and situate in said village and adjoining the Morrison House in said Forrestville, together with the cellar under said store, being the cellar and first floor of the building of the defendants, adjoining the Morrison House in the village of Forrestville in said county, together with the right to use the back yard of the lot upon which said building stands, in common with the defendants.

The defendants' counsel, after the jury was impanneled, moved that the complaint be dismissed on the ground that it did not allege sufficient title and interest in the plaintiff to maintain the action, it being only a leasehold interest for two years; and 2d, that the complaint contains no description of any land. The motion was denied and the defendants excepted.

The court, in a subsequent part of the trial, allowed the plaintiff to amend the complaint by inserting the description of the premises as contained in a deed put in evidence, viz.: "All that tract or parcel of land situate in the village of Forrestville, county aforesaid, being a part of lot fifty-eight in the sixth township and tenth range of the Holland Land Company's survey, bounded and described as beginning at a point in the south line of Main street in said village of Forrestville, etc., etc." The description is quite long and definite. The counsel of the defendants objected to the allowance of this amendment, and excepted.

The point is now made that the court should have dismissed the complaint; that it contained no description of land whatever, and 2 R. S., 304, § 8, is cited; also, *Budd* v. *Bingham* (18 Barb., 494).

It may be conceded that the description of the premises in the complaint was uncertain and defective. It was taken substantially from the lease, put in evidence, executed by the defendants and Delong, the plaintiff's assignor.

Olendorf v. Cook.

The description was much better than the description in *Budd* v. *Bingham.* There the description was "north-wardly by lands of said plaintiff; eastwardly by lands of said plaintiff; southwardly by lands of said defendant; and west-wardly by lands of the said plaintiff." The court says (p. 498) this description embraces nothing whatever, and the judge proceeds to show this, as he understood the case, and that there was nothing to be made more definite and certain. And yet it is said in the opinion that the court, in its discre-tion, might have proceeded with the trial, and, if the plaintiff had established a right to recover, have taken a verdict and permitted him to amend in conformity with the evidence. This was the course adopted in the present case. The per-mission of a party to amend, under such circumstances, is a matter of sound discretion in the court (Code, § 173), and the decision is not a matter for exception.

The counsel for the defendants renews in his brief the objection that the plaintiff could not recover upon the title stated in the complaint, " it being only leasehold interest for two years," and cites Adams on Ejectment (18); also, the Revised Statutes on ejectment and some other provisions, and the counsel comments upon them. He also cites *The Mayor of New York* v. *Mabie* (3 Ker., 151), and some other authorities. By the common law the action of ejectment could only be maintained for *corporeal* hereditaments, and this is what Adams as cited says, and this is so now by our law. In *The Mayor of New York* v. *Mabie*, the right to *collect wharfage* was demised and leased to Mabie by the city, and the question was whether a covenant could be implied against the city for quiet enjoyment as to the acts of the city; and this depended upon the question whether the lease was a conveyance of real estate, as the Revised Statutes had declared that no covenant should be implied in such con-veyance. It was held by the court that the instrument was not a conveyance of real estate, and that a covenant might be implied. The case has no application to the present case.

The counsel seems to suppose that the action to recover

possession of land is controlled by the nature or quality of the estate, and as a term for years is a chattel interest, personal estate, and goes to the administrator as a chattel interest, that the tenant or owner of the term cannot maintain ejectment. This is a mistake. Ejectment at common law lay to recover possession of the land held under a lease for years, whatever was the duration of the term. If one is entitled to the possession of real property he may maintain an action to recover the possession. Real property is defined in the Code (§ 462) as lands, tenements and hereditaments. The action will not lie for an incorporeal thing. It must be something corporeal. In the present case the action was to recover possession of land, a store.

The defendants' counsel requested the court to submit to the jury the question as to a reformation of the lease, and the question as to fraud in procuring it. The court refused, and the counsel excepted.

David Cook, one of the defendants, as a witness, stated the conversation between him and Delong preceding the execution of the lease. He says that Delong stated that he thought he would put in groceries on one side of the store, and crockery or dry goods on the other; that he told Delong that he objected to billiard tables being on the ground floor; that they were going to remove their table into the room over the store, and that he told Delong that it would be necessary to put in columns to support the floor above when the tables were moved there; that Delong said he could get them turned in Dunkirk, and that he did so; that he told Delong he had better put in the columns, as he was a merchant, and knew where he wanted them, and he said he would; that he told Delong he would not rent the premises except for a store; that Record drew the lease, the parties went to his office; that he told Record that they had agreed to rent the premises to Delong for a grocery or dry goods store; that he did not notice at the time that the provision was not in the lease as drawn, he supposed it was; that he did not know as he told Record to draw the lease so as to restrict it to a store.

Henry A. Cook, the other defendant, says they asked Delong, before the lease was drawn, what he wanted to use the premises for, and he said groceries on one side, and dry goods or crockery on the other; that he proposed to come there and go into business.

Delong was examined for the plaintiff, and stated that Cook asked him what he was going to put in, and he said he did not know; that he might want to put in groceries or drugs; that Cook said he would lease the store; and at another time Cook asked him what he was going to put in the store, and he said he did not know, he might put in groceries, dry goods and liquors. They went to Record's office, and Cook dictated the lease, and it was read by Record, and he thinks Cook read it; he, Delong, read it.

Record was a witness for plaintiff. He drew the lease. Cook made all the directions about the lease, except the provision about fire. Cook dictated and he drew it, and thought it was ended and then read it, and then added the fire clause as suggested by Delong, and then read it all over again, and it was then signed by them and they took it away. Henry A. Cook was not at the office; he signed the lease at the store without reading, as his father said it was right, and it was taken back to Record for safe keeping.

Uriah Chapman, for plaintiff, heard Delong and David Cook talking about the property and leasing it. Cook asked Delong what he was going to do with it, and Delong said he did not know; and Cook said he did not care if he only took the premises.

Manley Griswold's deposition was read. He stated, at considerable length, the conversation between David Cook and Delong, and the terms of the contract. Delong, in answer to a question, said he wanted to use it for a provision store and grocery and he did not know but some crockery, and Cook told him he could have it for $250 a year, paid quarterly. This witness details the talk about fixing the store, shelves, columns, etc., etc., but nothing more about the use to which the store might be put. The court decided

that the evidence was not sufficient to authorize an amendment or reform of the contract, and the defendants excepted, and subsequently refused to submit the question to the jury, and the defendants excepted. I shall not now stop to inquire as to the proper practice in such a case; that is, whether the question of a reform of the contract was a question for the court or for the jury. Such questions, prior to the Code, were never tried by a jury unless so directed upon feigned issues, awarded by the Court of Chancery. It is very difficult if not impossible, in such cases, to submit them to a jury, and preserve the spirit of the rules and law as administered in courts of equity. I apprehend that when such a question is raised by the answer, it should be disposed of prior to the trial of the principal issue, as to the title to the land or the right of possession, or the evidence may be taken upon the trial of the principal issue, and the court may decide the equitable defense, as in this case, or reserve the question and take the verdict upon the jury issues. The issue of fact, in an action for the recovery of real property, must be tried by a jury, unless such trial is waived or it be referred by the consent of parties. (Code, § 253.) The issue as to reforming the contract is an issue to be tried by the court. (See Code, §§ 253, 254.) The court may in certain cases order the whole issue, or any specific question of fact involved therein, to be tried by a jury, or refer it as provided in §§ 270, 271. (See § 254.) Section 72 abolishes feigned issues and substitutes distinct and plain questions of fact, and rule 33 provides the practice. The court may, in all the cases embraced in § 254, try the issue. This section embraces what were known as suits in equity. Now, in this case, the issue as to reforming the contract was an issue by itself, and an issue to be tried by the court and not to be submitted to the jury. The court decided it, and it is not and cannot be claimed that the decision was against the evidence. There was no evidence to go to the jury.

But assuming that it was a question to be submitted to a jury upon sufficient evidence, as I think it was not, no issues

having been settled and directions to try by jury, still I think no error was committed.

The preponderance of the evidence was so decided that, had the jury found as a fact that the parties agreed that the store should not be used for a billiard room or lager saloon, and that it was agreed that such provision should be inserted in the lease, and that this had been omitted by inadvertence, the court would, upon motion, have set the verdict aside. The evidence of David Cook, standing alone, would hardly have justified a decree reforming the lease. Delong, and several other witnesses, give a very different relation of the talk of the parties. The evidence of the scrivener is very clear. He drew and read the lease, as dictated by Cook.

The question of fraud may, perhaps, have been a proper question for the jury, as the plaintiff's right to possession depended upon the lease, and, if this had been fraudulently obtained, the defendants could avoid it.

The theory of the defendants was that the plaintiff Olendorf procured Delong to get the lease by artifice, so that he could use the store for his billiard tables. There was an utter failure of evidence to establish this position, and a verdict affirming it would have rested upon suspicion. Delong says he sold the lease to the plaintiff for twenty-five dollars; that he had no understanding with him; that he took the lease himself and intended to go there. Olendorf was a witness, and it appeared from his and Delong's evidence that they had had conversation about the store, and Delong had told him it could be rented and the price, and asked him what he thought of it, and Olendorf told him he thought it cheap, etc. Delong lived in Dunkirk, and Olendorf in Forrestville, where the store was. After Delong had obtained the lease, the plaintiff spoke to him about it, and said he would like to own the lease or a part of it, and Delong said he would think of it.

I repeat that any verdict that there was fraud in procuring the lease would have rested upon no evidence, but upon suspicion.

The court directed the jury to find a verdict for the plain-

tiff for the premises, as claimed in the complaint as amended, and the defendants excepted. Upon this the point is now made that the amendment of the complaint related only to the description of the land, and that as the complaint alleged that the plaintiff was seized, on the 1st day of May, 1868, as tenant of the defendants for the term of two years, of the premises, the plaintiff has recovered for a longer term than the proof justified.

The demise is " for and during the term of one year from the 1st day of May, 1868, with the refusal thereof for the next succeeding year thereafter, at the same price hereinafter named." I do not understand that the plaintiff had by virtue of this lease, a title for a term beyond one year from May 1, 1868. The refusal for another year was a covenant for a lease for another year if the lessee should elect to take such lease, and if he should so elect perhaps no new lease would be necessary. The recovery should have been as upon a demise of one year only. But I doubt whether the exception was sufficient.

The court had just allowed the complaint to be amended by inserting a proper description of the premises, and then directed a verdict for the premises as claimed in the complaint as amended, and the defendant excepted. What did the court probably understand by this general exception ? Probably nothing more or less than that the counsel objected to any recovery, or rather that the court should direct a verdict claiming that the plaintiff had no right to recover, or that the case should go to the jury. This followed by requests that certain questions should be submitted to the jury. The court would not be likely to understand that the exception was pointed to the question now made, viz.: That the verdict would be for a term of two years instead of one, commencing May 1, 1868. If the counsel so understood, at the time, he should have called the attention of the court to the lease in evidence, and to the fact that the complaint was too broad, and the complaint could have then been amended, or the direction to the jury modified.

The People *v.* Bristol.

There needs, however, be no difficulty now in the case. The Code gives the court *here* ample authority to correct the mistake before or after judgment, in furtherance of justice, to conform the pleadings to the facts proved. (Code, § 173.) This is a very proper case for the exercise of this discretionary power, and the court directs such amendment. The verdict in this case was general for the premises as demanded in the complaint. By the statute, the verdict should have specified the duration of the term. (2 R. S., p. 307, § 30, subdivision 7.) If the term had been properly stated in the complaint, as required by 2 R. S., p. 304, § 10, the verdict would have been sufficiently definite to comply with the provision of the statute. It is provided by the statute, that if the right or title of the plaintiff expires after the commencement of the suit, and before trial, the verdict shall be returned according to the fact, etc., etc., and the judgment shall be as to the premises claimed, that the defendant go thereof without day. In this case the right and title of the plaintiff have expired since the trial. I suppose the court simply affirms the judgment, but no execution for the possession will issue or be awarded. The complaint should be amended as above stated, and the judgment should be affirmed with costs.